THE STATE OF OHIO, APPELLEE, *v.* MILLER, APPELLANT.

[Cite as State v. Miller (1980), 67 Ohio App. 2d 127.]

(No. 5-79-32—Decided February 12, 1980.)

*Mr. J. Stanley Needles,* prosecuting attorney, and *Mr. J. Bruce Brimley,* for appellee.

*Mr. Paul D. Beach* and *Mr. Steven H. Walker,* for appellant.

COLE, J.   This is an appeal from a judgment of conviction and sentence by the Findlay Municipal Court of the appellant for the offense of recklessly inconveniencing a police officer by turbulent behavior in violation of R. C. 2917.11. Defendant-appellant, Robert Miller, asserts three assignments of error, the second of which we deem basic to the determination of this appeal. It reads as follows:

"The trial court erred in that the evidence fails to support a finding of inconvenience to Deputy Heldman as charged in the complaint."

The statute involved is long and complex but only the first portion is here involved; R. C. 2917.11 reads, in part, as follows:

"(A) No person shall recklessly cause inconvenience, annoyance, or alarm to another, by doing any of the following:

"(1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior[.]"

The charge against the defendant was that he "did recklessly cause inconvenience to Deputy Michael Heldman of the Hancock County Sheriff's Department by engaging in turbulent behavior."

The critical issue presented is whether, under the circumstances here involved, a peace officer may be inconvenienced by performing his duty of enforcing the law. The evidence clearly and unequivocally establishes that defendant in no way threatened the peace officer or attacked him in any way. On cross-examination, Deputy Heldman, speaking of the defendant, responded as follows:

"Q. And he caused you absolutely no trouble?
"A. No."

The evidence indicates that the defendant and one Martinez were engaged in an altercation over an issue of property damage and were wrestling when the officer arrived. The incident occurred at an event known as the "Jenera Oktoberfest" late at night. Martinez was leaving; defendant accused him of damaging a mailbox on defendant's property, and the altercation ensued. Deputy Heldman testified that he was in Jenera, Ohio, on duty, from about 8:00 p.m. on. Between 1:00 a.m. and 1:30 a.m., the following morning, Deputy Heldman learned of this altercation. Earlier, his vehicle had been parked on the defendant's premises "because we were running excorts [sic] of money from [the] Oktoberfest to the bank in Arlington***." Upon returning to the area, he found the two men wrestling and separated the antagonists. "After we arrived, I think after Mr. Miller [the defendant] observed me, he immediately stopped***."

It is fully apparent that defendant was charged with inconveniencing Deputy Heldman by engaging in the wrestling altercation with Martinez. However, this altercation was a breach of the peace which Heldman, as a deputy sheriff and peace officer, was employed to enforce.

R. C. 2903.13(A) states that "[n]o person shall knowingly cause or attempt to cause physical harm to another."

Both defendant and Martinez were apparently violating this statute at the time the deputy arrived. Under R. C. 311.07(A), each sheriff has the duty to "***preserve the public

peace and cause all persons guilty of any breach of the peace, within his knowledge or view, to enter into recognizance with sureties***." A deputy acting in the sheriff's name would have the same duties and powers (R. C. 3.06[A] ). Deputy Heldman, therefore, had a duty and the power to effect an end to the altercation. Was he thereby inconvenienced in being called upon to do that which was his duty? We think not. In Webster's Third New International Dictionary (1971 Ed.), the noun "inconvenience" is defined as follows:

"***the quality or state of being unsuited or unadapted to personal needs or comfort***."

"Inconvenience," as a verb, is simply defined as "to subject to inconvenience." *Id.*

Criminal statutes must be strictly construed against the state. Giving full weight to the qualifying term "personal," in the definition set forth, *supra,* we conclude that the conduct herein only engaged Deputy Heldman because he was a peace officer, and in that capacity. His personal needs or comfort were not influenced by the "turbulent conduct" except to the extent he was passing by and observed it. As a peace officer, however, the turbulent conduct involved required him to perform his duties as a peace officer. He was, therefore, basically affected in his *official,* not his personal, needs and comfort.

We, therefore, determine that under the state of facts here involved, there was no "inconvenience" to Deputy Heldman resulting from the participation of the defendant in the altercation. As to Deputy Heldman, the altercation created not an inconvenience, but a job.

There may have been other violations in the conduct of the parties, but it is our conclusion that the evidence fails to establish as a matter of law that the defendant was guilty of the specific violation charged.

Accordingly, the second assignment of error is well taken.

The first assignment of error is directed to the constitutionality of the statute involved. However, the previous discussion and conclusion adequately dispose of the case. It is a basic general rule that a court will not pass upon the constitutionality of a statute where the disposition of the case may be determined on other grounds. *In re Baker* (1969), 20 Ohio St. 2d 142; *State, ex rel. Hofstetter,* v. *Kronk* (1969), 20 Ohio St. 2d 117; 10 Ohio Jurisprudence 2d, Constitutional Law, Sections 113 and 116 and cases therein cited.

The last assignment of error concerns an objection to identification testimony by Martinez, it being contended that his identification in court was tainted by gestures of the prosecutor indicating the defendant as the person to be identified. Whether such gestures occurred is disputed and, of course, not resolved by the record. The prosecutor phrased his question as follows:

"* * * On your way towards the car, did you have occasion to see the defendant, Robert Miller, who is seated to my right?"

This was excluded as leading, and the prosecutor later asked the witness the following: "Daniel, on your way to the car, did you see anybody in this courtroom?" The witness stated that he saw Mr. Miller.

Whether this led to a perversion of the identification process is dependent upon seating arrangements and gestures which are not part of the record. It would appear that the issue involves the weight, not the admissibility, of the testimony. In any event, there was ample identification of the defendant by the deputy sheriff who was well acquainted with the defendant and had ample opportunity to observe and converse with the defendant at the time of the altercation. Any question as to the identification by Martinez (and the record does not reveal any identification beyond the witness stating the name of the defendant) would constitute, at the most, harmless error beyond a reasonable doubt.

Having, however, determined that the second assignment of error is well taken, the judgment of the trial court is reversed and the defendant is discharged.

*Judgment reversed.*

GUERNSEY, P.J., and MILLER, J., concur.