The STATE of Ohio, Appellee,

v.

DICKEY, Appellant.

[Cite as *State v. Dickey* (1991), 75 Ohio App.3d 628.]

Court of Appeals of Ohio,
Ashtabula County.

No. 90–A–1528.

Decided Aug. 19, 1991.

*Kyle B. Smith,* Law Director, for appellee.

*Dennis M. Reid,* Ashtabula County Public Defender, for appellant.

---

CHRISTLEY, Judge.

This is an appeal from a three-day jury trial in the Conneaut Municipal Court, in which appellant, John Dickey, was found guilty of aggravated disorderly conduct. The trial court then sentenced him to thirty days in Ashtabula County Jail. This appeal ensued.

Appellant was tried simultaneously with two other defendants. The charges against appellant and his co-defendants were similar in nature and arose from the same fact scenario.

To-wit: sometime during the evening of August 13, 1989, two members of the Conneaut Police Department were dispatched to a local apartment complex to investigate an alleged fight. Upon arriving at the scene, the first

officer began to question persons in a crowd which had formed outside the complex. Appellant was a member of this crowd.

While speaking with the crowd, the first officer became embroiled in a heated argument with one of the co-defendants, Tuttle. When Tuttle refused to cooperate with the first officer, the second officer arrested her and began to escort her from the scene. Before he could get her to a squad car, the second co-defendant, Hathy, ran up and began to hit the second officer.

As this was taking place, appellant stepped from the crowd and yelled at the first officer, "What the fuck's going on." In response, the officer asked appellant to step back. Appellant then stated, "What are you going to do, asshole, pig? You going to arrest me?" After the officer again warned him, appellant again taunted the officer. At that time, the officer arrested appellant and placed him in a squad car.

On appeal from his conviction, appellant has raised the following assignments of error:

"1. Appellant was deprived of due process of law as he was convicted of aggravated disorderly conduct in violation of Revised Code 2917.11(A)(2) without support of the manifest weight of the evidence.

"2. The Appellant was deprived of due process of law by a verdict form that contained a finding of guilty on its fact and required the jury to expend effort and time to write the word not before the word guilty if it chose to find the Defendant not guilty."

■ Although worded in terms of manifest weight, appellant's first assignment of error essentially challenges the sufficiency of the evidence upon which his conviction was based. Specifically, appellant contends that his actions, as outlined above, do not constitute a violation of the disorderly conduct statute.

Appellant was charged with a violation of R.C. 2917.11(A)(2), which provides:

"(A) No person shall recklessly cause inconvenience, annoyance, or alarm to another, by doing any of the following:
" * * *

"(2) Making unreasonable noise or offensively coarse utterance, gesture, or display, or communicating unwarranted and grossly abusive language to any person; * * *."

In relation to this offense, Section (E) states that if the offender persists in his conduct after being warned to desist, disorderly conduct becomes a misdemeanor of the fourth degree.

In interpreting R.C. 2917.11(A)(2), the courts of this state have held that the mere use of profane language in the presence of a police officer is not sufficient to constitute disorderly conduct. For example, in *Toledo v. Taylor* (July 13, 1990), Lucas App. No. L–89–307, unreported, 1990 WL 97689, the defendant refused to answer the officer's questions and also used profane language on three occasions. In concluding that disorderly conduct had not been proven, the Sixth Appellate District emphasized that the defendant " * * * was never threatening and that his language had no effect on those persons present at the scene." *Id.* at 5.

However, when the statements are made in such a manner that a crowd could easily be incited, the courts have reached the opposite conclusion. In *State v. Callahan* (1989), 48 Ohio App.3d 306, 549 N.E.2d 1230, the defendant had berated the officer by calling him a "pig," a "Nazi," and a "Gestapo." Upon noting that the defendant's remarks had been made in an "angry" crowd and that her actions had increased the likelihood of violence, the First Appellate District held that a conviction for disorderly conduct was justified.

The *Callahan* analysis is readily applicable to the facts of the instant case. Appellant's defiant remarks to the first officer were made at a time when the crowd was becoming agitated and belligerent. The second officer was already struggling to physically subdue the other two co-defendants. Under these circumstances, appellant's actions were clearly increasing the volatility of the situation, not just by name calling, but by actually challenging the officer's authority to make appellant step away from the situation. If the officer backed down to appellant, it could be construed as a clear signal to others of the crowd that they did not have to obey the officer's directions to not interfere. Obviously, this would justifiably cause alarm and concern on the part of the officers.

█ In arguing that the evidence was not sufficient to warrant the conviction, appellant correctly notes that the testimony of the arresting officers at trial contained conclusory statements which characterized his actions as disorderly conduct. For example, in relation to appellant's actions, the first officer testified:

" * * * I asked him to retreat—stop where he was. To cease in this type disorderly conduct he was presenting to the officer at that time, to myself. * * * And I said, Mr. Dickey, you're under arrest for aggravated disorderly conduct. You persisted—he stood there for a second after this boisterous, turbulent behavior and causing great nuisance and alarm and annoyance * * * ."

While the conclusions in these statements, in and of themselves, could not form the basis of a finding of guilty, the officer's overall testimony did

contain sufficient references to the facts to merit giving the case to the jury. Thus, the first assignment in this appeal is not well taken.

■ Appellant's second assignment of error challenges the legal sufficiency and prejudicial effect of the verdict forms which the trial court gave to the jury immediately before they began their deliberations. Appellant submits that the forms used were prejudicial to her because they implied a finding of guilty.

Upon instructing the jury on the charges against appellant and the co-defendants, the trial court made the following statement:

"Now, Ladies and Gentlemen, I have prepared six (6) verdict forms which you will have with you in the jury room.

" * * *

"We will start with the verdict forms. *State of Ohio v. John Dickey.* The offense states Aggravated Disorderly Conduct. And it will state: The Jury in. this case finds the defendant, John Dickey guilty of the offense charged with six signature lines where the foreman or forelady will sign on the bottom line. If you find the defendant guilty, you just sign the document. If you find the defendant not guilty, right [*sic*] it in before in the blank, before the word guilty and then sign the document."

Once the court had concluded its instructions to the jury, counsel for one of the co-defendants objected to the verdict forms and moved for a mistrial. The court overruled this motion, and then submitted to the jury six additional verdict forms. On these particular forms, the word "not" was typed in the blank space immediately before the word "guilty." The court also admonished the jury that the fact that they had only received six verdict forms originally should not be interpreted to mean that a certain result was expected.

In arguing that the original six forms were prejudicial, the point is made that the forms were inconsistent with the standardized form which is employed by Ohio courts. Without citing any authority, it is asserted that the typical verdict form does not pre-insert the word "guilty;" *i.e.,* the standardized form requires the jury to insert the words "guilty" or "not guilty." In support, the following example is given:

"We, the jury, find the defendant, John Doe, (*) .......... of (insert offense), (a felony of the ... degree).

"(*) Insert in ink: Guilty or Not Guilty."

While this court would agree that the foregoing form is preferable, the record before us does not support the proposition that appellant was preju-

diced by the use of the original form. As we noted above, the trial court both specifically instructed and admonished the jury as to the use of the forms.

Given these instructions, this court concludes that the situation in this case is functionally indistinguishable from that in which the jury is initially given both a guilty form and a not guilty form. In that instance, the word "guilty" is already contained on the form. We do not believe that the mere fact that the jury was required to write the word "not" on the instant form insinuates that a guilty verdict was preferred by the court. The court's instruction and its subsequent admonishment to the jury were sufficient to enable the jury to indicate its own verdict through the forms. Thus, appellant's second assignment is also without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

FORD, P.J., and NADER, J., concur.