OPINION
{¶ 1} Appellant, Jodie Kirkpatrick, appeals from the judgment entered by the Willoughby Municipal Court. Kirkpatrick was fined $150 and ordered to pay court costs as a result of her conviction for disorderly conduct.
 {¶ 2} On January 3, 2007, an officer from the Eastlake Police Department responded to a local residence regarding a complaint of a dog. The dog allegedly attacked a young boy. While the responding officer was investigating the situation, the *Page 2 
dog charged the officer and two other individuals. The officer shot and killed the dog. Following the shooting, several additional officers responded to the scene.
 {¶ 3} Lieutenant Lawrence Edward Reik also responded to the call. On Lieutenant Reik's way to the scene, Kirkpatrick backed out of a driveway in front of him. He followed Kirkpatrick past the residence where the shooting occurred. At that point, he stopped Kirkpatrick's vehicle. Kirkpatrick informed Lieutenant Reik that her son lived at the residence in question, and she lived further up the street. Lieutenant Reik asked her to contact her son and inform him that the dog was shot. At that time, Kirkpatrick became emotional and asked why the dog had to be shot. After Kirkpatrick called her son, Lieutenant Reik advised her to go home so the officers could finish the investigation.
 {¶ 4} Kirkpatrick drove to her residence. Within a few minutes, she began walking towards her son's house. As she was walking, and still about eight houses from the scene, she yelled, "`[y]ou cock-suckers, you didn't have to shoot my fucking dog' — or, `shoot the fucking dog.'" Lieutenant Reik approached Kirkpatrick and met her about half way to her son's house. On his way towards her, he informed her that she needed to go home and stop yelling. Kirkpatrick continued towards Lieutenant Reik and, when she was within arm's reach of him, she yelled, "`[y]ou're all motherfuckers.'" At that point, Lieutenant Reik arrested Kirkpatrick.
 {¶ 5} Kirkpatrick was charged with disorderly conduct in violation of the Eastlake Codified Ordinances, a fourth-degree misdemeanor. This offense was later amended to a charge in violation of R.C. 2917.11. Kirkpatrick pled not guilty to the offense, and a bench trial was held. Lieutenant Reik and Officer Patrick Joslin testified for the state. *Page 3 
Following the state's case-in-chief, Kirkpatrick moved for acquittal pursuant to Crim.R. 29. The trial court overruled the motion. Kirkpatrick testified in her own defense. She acknowledged that she said the swear words that Lieutenant Reik heard.
 {¶ 6} The trial court found Kirkpatrick guilty of a lesser-included version of disorderly conduct, to wit, R.C. 2917.11(A)(2), a minor misdemeanor. The trial court imposed a $150 fine, plus court costs.
 {¶ 7} Kirkpatrick raises three assignments of error. Her first and second assignments of error are:
 {¶ 8} "[1.] The trial court erred to the prejudice of the defendant-appellant when it denied her motion for acquittal made pursuant to Crim.R. 29(A).
 {¶ 9} "[2.] The trial court erred to the prejudice of the defendant-appellant when it denied her motion for acquittal because her actions resulting in the charge are protected under the First andFourteenth Amendments to the United States Constitution and Section 11, Article I of the Ohio Constitution."
 {¶ 10} Kirpatrick's first and second assignments of error both challenge the sufficiency of the state's evidence. Therefore, we will address these assigned errors in a consolidated analysis.
 {¶ 11} A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction. Crim.R. 29(A). When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a *Page 4 
reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307.
 {¶ 12} Kirkpatrick was convicted of disorderly conduct, in violation of R.C. 2917.11, which provides, in relevant part:
 {¶ 13} "(A) No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:
 {¶ 14} "* * *
 {¶ 15} "(2) Making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person."
 {¶ 16} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C.2901.22(C).
 {¶ 17} Initially, Kirkpatrick argues that there was insufficient evidence that anyone was inconvenienced, alarmed, or annoyed by her actions. Lieutenant Reik testified that there were other bystanders in the neighboring properties. Kirkpatrick notes that none of these individuals testified; therefore, there is no evidence that they were inconvenienced, alarmed, or annoyed. We agree. The Second Appellate District has held that the fact other people may have heard an individual's use of profanity directed at a police officer is insufficient to show that the people were inconvenienced, alarmed, or annoyed when none of them testified that they were, in fact, inconvenienced, *Page 5 
alarmed, or annoyed. State v. Holmes (1998), 129 Ohio App.3d 735, 737. In Holmes, the defendant was yelling profanities at an officer at 2:00 a.m., only 60 feet from an apartment building. Id. In this matter, we will not infer that the citizens who may have heard Kirkpatrick's statements were inconvenienced, alarmed, or annoyed.
 {¶ 18} Next, we examine whether Lieutenant Reik was inconvenienced, alarmed, or annoyed. Lieutenant Reik was attempting to take measurements at the scene of the shooting when he had to stop and address Kirkpatrick's comments. It is reasonable to assume that the trial court considered the fact that this was a very emotionally charged scene, with the great potential to get out of control if lawful direction of police officers was not obeyed. Kirkpatrick cites State v. Miller (1980), 67 Ohio App.2d 127, in support of her position that an individual may not "inconvenience" a police officer. In Miller, the defendant was wrestling with another person, and the officer had to investigate the situation. Id. at 128. The court held that since the officer had a duty to enforce the law, his investigation of the altercation was "not an inconvenience, but a job." Id. at 129. We decline to apply this holding to the case sub judice. Lieutenant Reik was investigating a serious matter, i.e., another officer shooting and killing a dog in a residential area. The discharge of a police officer's weapon requires a serious and thorough investigation. Kirkpatrick was directly told, on two occasions, to go home and allow the officers to complete the investigation. Instead, she continued screaming vulgar language. As a result, under the facts of this case and in a light most favorable to the prosecution, it was reasonable for the trial court to have found that Lieutenant Reik was inconvenienced, annoyed, and alarmed in that he was forced to stop his investigation of the incident, stop any further breaches of the peace, and deal with Kirkpatrick's *Page 6 
behavior. Thus, we hold that, under the facts of this case, a trier of fact may find that interfering with an official police investigation may cause an officer inconvenience, annoyance, and/or alarm.
 {¶ 19} The state presented sufficient evidence that Kirkpatrick recklessly caused an inconvenience, annoyance, and/or alarm to Lieutenant Reik by making an offensively coarse utterance and communicating unwarranted and grossly abusive language at a potentially volatile scene while officers were conducting an important investigation. However, our inquiry does not end here.
 {¶ 20} In regard to disorderly conduct convictions based solely on speech, the Supreme Court of Ohio has held:
 {¶ 21} "A person may not be punished under R.C. 2917.11(A)(2) for `recklessly caus(ing) inconvenience, annoyance, or alarm to another,' by making an `offensively course utterance' or `communicating unwarranted and grossly abusive language to any person,' unless the words spoken are likely, by their very utterance, to inflict injury or provoke the average person to an immediate retaliatory breach of the peace."State v. Hoffman (1979), 57 Ohio St.2d 129, syllabus, followingCincinnati v. Karlan (1974), 39 Ohio St.2d 107.
 {¶ 22} Thus, the Supreme Court of Ohio essentially added an additional element for a conviction under R.C. 2917.11(A)(2), that the defendant's comments amount to "`fighting words.'" State v. Wood (1996),112 Ohio App.3d 621, 627. Fighting words are not protected speech, therefore, punishment for uttering fighting words does not violate an individual'sFirst Amendment right to freedom of speech. (Citations omitted.) Id. An objective standard is used to determine whether specific speech constitutes fighting *Page 7 
words. Warren v. Patrone (1991), 75 Ohio App.3d 595, 598, citingCincinnati v. Karlan (1973), 35 Ohio St.2d 34, 43.
 {¶ 23} Kirkpatrick correctly notes that, generally, the mere use of profanity in the presence of a police officer does not equate to fighting words. In State v. Dotson, the defendant screamed "`fuck you'" to an officer, told the officer to give her "`the fucking ticket,'" and called the officer a "`motherfucker.'" State v. Dotson (1999),133 Ohio App.3d 299, 301. In reversing the appellant's conviction for disorderly conduct, the Seventh Appellate District held that the appellant's comments would not incite an ordinary person to engage in a breach of the peace. Id. at 303. In Warren v. Patrone, an individual approached a parking enforcement officer, "threw or placed" a parking ticket near the officer, and told the officer "`this is what people think of your asshole tickets, asshole.'" Warren v. Patrone, 75 Ohio App.3d at 597. This court held that the appellant's actions would not cause a reasonable person to be provoked into an immediate breach of the peace. Id. at 598. In Chillicothe v. Lowery, the defendant repeatedly told the responding police officers to "`fuck off" and called them "`motherfuckers.'" Chillicothe v. Lowery (July 13, 1998), 4th Dist. No. 97 CA 2331, 1998 Ohio App. LEXIS 3336, at *1-2. After a detailed analysis of several appellate cases on the issue of fighting words, the Fourth Appellate District concluded that the appellant's comments did not constitute fighting words. Id. at *24. Finally, in State v.Hampton and State v. Maxson, the First Appellate District held that the use of profanities directed at a police officer did not rise to the level of provoking a reasonable person to an immediate breach of the peace. State v. Hampton (1990), 66 Ohio App.3d 30, 32; State v.Maxson (1990), 66 Ohio App.3d 32, 36. *Page 8 
 {¶ 24} However, this court has held that, in certain circumstances, profanity specifically directed at a police officer may constitute fighting words. State v. Wood, supra. In Wood, the defendant entered the library at Kent State University and began to verbally assault two police officers. The defendant essentially taunted the officers, by repeatedly telling them "`fuck you,'" giving the officers the gesture of the middle finger, and continuing the loud, abusive language for several minutes, despite the officers' repeated requests to stop. State v.Wood, 112 Ohio App.3d at 628.
 {¶ 25} In addition, if the defendant's words are likely to incite others, profanity in the presence of a police officer may constitute fighting words. In State v. Dickey, several officers responded to a fight at an apartment complex. State v. Dickey (1991),75 Ohio App.3d 628, 629. The officers arrested one individual, and a second individual began to strike an officer. Thereafter, the defendant taunted the police officers, calling one of them an "`asshole pig.'" Id. at 630. This court held that the appellant's comments were not protected speech, because they could have enticed other members of the crowd into further action against the police. Id. at 631. In State v. Callahan, the defendant made several derogatory comments to a police officer at an abortion protest.State v. Callahan (1989), 48 Ohio App.3d 306. The First District held that the defendant's conduct of berating the officer, in the midst of a crowd that was excited and angered, and after requests to desist, was such that it was likely to produce violence. Id. at 307.
 {¶ 26} In this matter, Kirkpatrick disregarded Lieutenant Reik's instruction to stay at her home. In addition, after she started yelling the profanities, she ignored Lieutenant Reik's order to desist. Moreover, Kirkpatrick's actions were likely to incite others. *Page 9 
Lieutenant Reik described the scene as being very emotional. The police initially responded to the scene after a young boy was attacked by a dog. The responding officer was forced to shoot and kill the dog, after it charged at the officer and two other people. At the time of Kirkpatrick's comments, there were about 10 citizens at the scene of the incident, and there were other people, including children, in the neighboring yards.
 {¶ 27} Kirkpatrick's actions were likely to incite others in two possible ways. First, it could encourage others who agreed that the dog should not have been shot to take action against the police. It is likely that some of the neighbors knew the dog and were also upset about it being shot. Secondly, and perhaps more significantly, there was evidence that the young boy's grandmother was at the scene giving a statement. The grandmother, in addition to other family members or friends of the boy who may have been present, was likely to be incited by Kirkpatrick's comments that the police did not have to shoot the "fucking dog." It is important to remember that this was the same dog that attacked the young boy. The fact that Kirkpatrick was criticizing officers who potentially saved the boy and others from further harm could have had the effect of informing the people at the scene, including the grandmother, that Kirkpatrick did not care about the boy's welfare.
 {¶ 28} This was a very emotional situation for all parties involved. Any time an officer is forced to discharge his weapon in a residential area, it is a serious incident. In this matter, a young boy had been attacked, and a dog was dead. Everyone's emotions at the scene were elevated. Kirkpatrick's comments were likely to have incited these emotional people to resort to physical violence. Depending on the views of a particular *Page 10 
individual at the scene, this violence may have been directed at the police officers or at Kirkpatrick herself.
 {¶ 29} Under the test set forth in Jenks, it is clear that when viewed in a light most favorable to the state, there was sufficient evidence presented to allow "a rational trier of fact" to find the essential elements of the crime proven beyond a reasonable doubt.
 {¶ 30} Kirkpatrick's first and second assignments of error are without merit.
 {¶ 31} Kirkpatrick's third assignment of error is:
 {¶ 32} "The trial court erred to the prejudice of the defendant-appellant when it incorrectly applied the law based on a plain meaning interpretation of the statute."
 {¶ 33} Kirkpatrick objects to the following comments made by the trial court at the conclusion of the bench trial:
 {¶ 34} "The Court, taking everything into consideration, and particularly taking into consideration the statute that had been amended at an earlier time and looking at that as prohibiting gross and vulgar language, which, I believe, had been stated, at this time, the Court is going to make a finding of guilt * * * ."
 {¶ 35} Kirkpatrick argues that this language suggests the trial court interpreted R.C. 2917.11(A)(2) as a per se prohibition against gross and vulgar language, without considering the applicable case law addressing the constitutional issues. We note that the trial court made this statement in dictum, generally stating its reasons for finding Kirkpatrick guilty. We note the trial court indicated that it considered "everything" and that the trial court was presented with case law from Kirkpatrick's trial counsel regarding *Page 11 
the constitutional issues. Thus, we cannot say the trial court's general statement demonstrates the trial court misapplied the law.
 {¶ 36} Kirkpatrick's third assignment of error is without merit.
 {¶ 37} The judgment of the trial court is affirmed.
 CYNTHIA WESTCOTT RICE, P.J., concurs, DIANE V. GRENDELL, J., dissents. *Page 1