OPINION
{¶ 1} Defendant-appellant, Amanda Miller, appeals from a Belmont County, Eastern Division Court judgment convicting her of persistent disorderly conduct.
 {¶ 2} On February 24, 2007, Bellaire Patrolman Jim Hunt was patrolling the area near Lo Coco's Pizza when he saw appellant take off running into a lot after noticing him. This prompted Officer Hunt to put a spotlight on the lot. He then noticed appellant kneeling behind a vehicle. Officer Hunt announced himself as a Bellaire police officer and told appellant to stop. But appellant took off running again. Officer Hunt chased appellant on foot and caught up with her when she fell on some ice. Officer Hunt then handcuffed appellant and placed her in the back of his police cruiser. Once arrested and inside the cruiser, appellant cursed at Officer Hunt and the other officer who was with him, and kicked and head-butted the cage of the police cruiser.
 {¶ 3} Officer Hunt charged appellant with persistent disorderly conduct, a fourth-degree misdemeanor in violation of R.C. 2917.11(A)(1), and resisting arrest, a second-degree misdemeanor in violation of R.C. 2921.33(A).
 {¶ 4} The case proceeded to a bench trial where Officer Hunt was the only witness called. The court found appellant guilty of persistent disorderly conduct and not guilty of resisting arrest. It sentenced her to ten days in jail with eight days suspended and credit for time served, a $100 fine, and one year unsupervised probation. The court stayed appellant's sentence pending this appeal.
 {¶ 5} Appellant filed a timely notice of appeal on May 23, 2007.
 {¶ 6} Appellant raises two assignments of error, the first of which states:
 {¶ 7} "THE VERDICT OF GUILTY ON THE CHARGE OF PERSISTENT DISORDERLY CONDUCT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 8} Appellant argues that her conviction was against the manifest weight of the evidence. She contends that Officer Hunt could give no reason why he arrested her. Appellant points out that Officer Hunt could not categorize the area where he arrested her as a high-crime area. And she asserts that the only reason given for *Page 2 
her arrest was that she did not stop when Officer Hunt told her to stop. Appellant points out that once the officers caught up with her, they found no evidence that she had committed any crime. Therefore, she asserts, they should have simply let her go at this point after they ascertained her identity and realized that there was no evidence that she had committed a crime.
 {¶ 9} Appellant further contends that because the court found her not guilty of resisting arrest, it could not have found her guilty of persistent disorderly conduct. She argues that her arrest was unlawful and, therefore, anything she did to protest her unlawful arrest cannot be considered a crime.
 {¶ 10} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541. "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.
 {¶ 11} Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts.State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 12} The court found appellant guilty of persistent disorderly conduct in violation of R.C. 2917.11(A)(1), which provides that "[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another by * * * [e]ngaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior." Generally, a violation of this statute is a minor misdemeanor. However, disorderly *Page 3 
conduct is a fourth-degree misdemeanor when "[t]he offender persists in disorderly conduct after reasonable warning or request to desist." R.C. 2917.11(E)(3)(a).
 {¶ 13} At appellant's trial, Officer Hunt testified as follows. He was conducting routine patrol in the vicinity of Lo Coco's Pizza in Bellaire when he saw appellant. (Tr. 3-4). When appellant noticed Officer Hunt, she took off running into a parking lot. (Tr. 4). Officer Hunt then put a spotlight on the area where appellant had gone. (Tr. 4). He noticed appellant kneeling behind a vehicle. (Tr. 4). Officer Hunt stopped his cruiser and announced himself as a Bellaire police officer. (Tr. 4). Appellant took off running again. (Tr. 4). This time Officer Hunt pursued appellant on foot down an alley. (Tr. 5). Appellant slipped and fell on some ice. (Tr. 5). Officer Hunt was then able to catch up to her and handcuff her. (Tr. 5). He then placed appellant into his cruiser. (Tr. 6).
 {¶ 14} Officer Hunt stated that when he first saw appellant take off running, he had no idea why she took off and thought maybe a crime had been committed. (Tr. 4-5). When asked if there had been any difficulties in the area, Officer Hunt just stated, "there's a few bars in that area." (Tr. 5). Officer Hunt stated that appellant was under arrest after the second time she took off running because she did not stop when he advised her to do so. (Tr. 6).
 {¶ 15} Once Officer Hunt placed appellant in the cruiser, she started cursing at Hunt and the other officer who was with him. (Tr. 6). She also kicked and "headbutted" the cage of the police cruiser. (Tr. 6).
 {¶ 16} This was the extent of the testimony. The trial court found appellant guilty of persistent disorderly conduct, "mainly based on her actions after she was arrested and then she kicked the cage and head-butted the cage and her actions in not obeying the officer in stopping and not cooperating with the officer and require him to chase her and place her under arrest. The Court feels all that is Disorderly Conduct and specifically her actions after. She was cursing the officer, kicking and resisting in the cruiser." (Tr. 9). *Page 4 
 {¶ 17} While the trial court relied heavily on appellant's conductafter she was placed in the cruiser to support her disorderly conduct conviction, this was erroneous. Appellant's conduct giving rise to the charge had to have occurred before she was placed in the cruiser. Once Officer Hunt handcuffed appellant and placed her in the cruiser, she was already under arrest. In fact, Officer Hunt stated that appellant was under arrest when she ran the second time after he ordered her to stop. And there was no evidence whatsoever that appellant had done anything wrong up until this point except that she failed to stop running when advised to do so by the police.
 {¶ 18} When Officer Hunt ordered appellant to stop running, he was merely conducting an investigative stop. Because appellant ran when sighting the police officers, Officer Hunt thought that maybe a crime had been committed. (Tr. 4). So he ordered her to stop. Officer Hunt wished to determine why appellant ran upon noticing him. He simply wanted to investigate whether appellant may have been involved in some type of criminal activities pursuant to Terry v. Ohio (1968),293 U.S. 1, 19-24, 88 S.Ct. 1868, 20 L.Ed2d 889. Officer Hunt admitted that appellant had done nothing wrong other than running when he ordered her to stop. (Tr. 7). He stated that when he advises someone to stop and they refuse to stop it is a crime-either persistent disorderly conduct or resisting arrest. (Tr. 7).
 {¶ 19} The facts present here may support another charge, such as obstructing official business. The elements of that crime are as follows: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." R.C. 2921.31(A). When appellant ran from Officer Hunt after he ordered her to stop, she likely impeded him in the performance of his police duties.
 {¶ 20} But the facts do not support a conviction for persistent disorderly conduct. In order to convict appellant, the evidence had to show that she caused *Page 5 
inconvenience, annoyance, or alarm to Officer Hunt by engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior and that she persisted in this behavior after reasonable warning or request to desist.
 {¶ 21} There is no evidence that appellant engaged in fighting, engaged in threatening harm to persons or property, or engaged in violent behavior. That leaves turbulent behavior. So the question that arises is whether failing to stop when ordered to do so by a police officer constitutes "turbulent behavior" within the meaning of the disorderly conduct statute.
 {¶ 22} "[T]urbulent behavior refers to tumultuous behavior or unruly conduct characterized by violent disturbance or commotion."Steubenville v. Johnson (Aug. 7, 1997), 7th Dist. No. 96-JE-17, citingState v. Reeder (1985), 18 Ohio St.3d 25, 479 N.E.2d 280. In this case, there was no evidence that when she ran from Officer Hunt, appellant was engaged in any type of violent behavior. She did not cause any type of commotion or cause a disturbance to anyone. She simply ran.
 {¶ 23} Furthermore, Officer Hunt was not inconvenienced by appellant's behavior. Police officers encounter unruly individuals as a part of their day-to-day jobs. As one court put it: "As to * * * [the officer], the altercation created not an inconvenience, but a job." State v.Miller (1980), 67 Ohio App.2d 127, 129, 426 N.E.2d 497.
 {¶ 24} Officer Hunt did not testify that appellant's behavior caused him inconvenience, annoyance, or alarm. Nor did he testify that anyone else was present who was inconvenienced, annoyed, or alarmed by appellant's behavior. This court previously held that where the defendant argued and fought with police officers, because nobody testified that they were annoyed, inconvenienced, or alarmed by the defendant's behavior, the state did not prove that the defendant committed disorderly conduct. State v. Fort, 7th Dist. No. 99-CA-219, 2003-Ohio-1075. In this case too, the state did not prove that appellant committed persistent disorderly conduct.
 {¶ 25} Thus, the trial court erred in convicting appellant of persistent disorderly conduct. Accordingly, appellant's first assignment of error has merit. *Page 6 
 {¶ 26} Based on the merit of appellant's first assignment of error, her second assignment of error is rendered moot. It states:
 {¶ 27} "THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL."
 {¶ 28} For the reasons stated above, appellant's conviction is hereby reversed.
Vukovich, J., concurs.
 Waite, J., concurs. *Page 1