[Cite as *State v. Campbell*, 195 Ohio App.3d 9, 2011-Ohio-3458.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| THE STATE OF OHIO, | : | APPEAL NO. C-100427 |
| | | TRIAL NO. 10CRB-14107 |
| Appellee, | : | |
| | | *D E C I S I O N.* |
| v. | : | |
| | | |
| CAMPBELL, | : | |
| | | |
| Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Reversed and Appellant Discharged

Date of Judgment Entry on Appeal: July 15, 2011

John P. Curp, City Solicitor, Ernest F. McAdams Jr., City Prosecuting Attorney, and Gertrude Dixon, Senior Assistant City Prosecuting Attorney, for appellee.

J. Rhett Baker, for appellant.

HILDEBRANDT, Judge.

{¶1} Following a bench trial, defendant-appellant DeWitt Campbell was convicted of inducing panic in violation of R.C. 2917.31, a first-degree misdemeanor. Because there was insufficient evidence to sustain Campbell's conviction, we reverse the conviction and discharge Campbell.

{¶2}     At trial, Police Officer Jennifer Chilton testified that on May 8, 2010, she and her partner were dispatched to an apartment for a potential domestic-violence situation as a result of a 9-1-1 telephone call made by the daughter of the woman who rented the apartment.  Chilton testified that once they arrived at the apartment, she heard what sounded like "slaps" to someone's face and heard a male voice say, "Bitch, shut up."  Chilton knocked on the door, announced that it was the police, and asked Campbell to open the door.  He responded, "[F]*** you."  Chilton testified that she explained to Campbell that the police needed to make sure everyone in the apartment was safe.  Over the next 15 minutes, Campbell refused to let anyone enter, stating that the police would have to kick the door down to enter, but if they did, they "would meet [his] friend, [his] gun."  Chilton and her partner called for back-up, and eight other officers arrived.  At some point, a little girl in a nearby apartment came out and told police that the woman who rented the apartment was lying about her name and that it was "Joyce."  The girl also said that Campbell and Joyce fight all the time.

{¶3}     Chilton testified that Campbell called 9-1-1 twice during this encounter and told the 9-1-1 operator that everything was fine inside the apartment.  Over one hour after the other police officers had arrived, Campbell finally opened the door, and he was arrested.  Campbell told police that he thought that they had come to the apartment to investigate a custody dispute.

{¶4}     On cross-examination, Chilton testified that officers did not find a gun inside the apartment and that there was no evidence of domestic violence.  Further, she testified that the daughter who had made the original 9-1-1 call was not inside the apartment.  Campbell was charged only with inducing panic.

{¶5}     Campbell testified in his defense that Joyce was his girlfriend and that the apartment was hers.  He testified that she had instructed him not to open the door when the

2

police requested that he do so. Campbell stated that the police kept knocking on the door, so he told them that unless they had a search warrant, which they did not, he was going to call 9-1-1 and report that he was being harassed. He did speak with a 9-1-1 operator, who eventually convinced him to open the door so that the police could see whether anyone was hurt. When he opened the door, he was arrested.

{¶6} Campbell testified that he had never told the police officers that he had a gun. He said that his comment about meeting his "friend" referred to the 9-1-1 operator he had been speaking with. Finally, he testified that he had believed that the initial phone call that led to the investigation was a tactic used by an individual seeking to gain an advantage in a custody dispute.

{¶7} At the end of the trial, Campbell was convicted of inducing panic and sentenced to a 180-day jail term.

{¶8} Campbell now appeals, raising two assignments of error.

{¶9} In his first assignment of error, Campbell contests the sufficiency of the evidence underlying his conviction. He argues that the state did not prove that his actions had caused a "serious public inconvenience." We agree.

{¶10} To reverse a conviction for insufficient evidence, we must be persuaded, after viewing all the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found all the elements of the crime proved beyond a reasonable doubt.[1] In deciding whether the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of the witnesses, because both functions are reserved for the trier of fact.[2]

---

[1] *State v. Waddy* (1992), 63 Ohio St.3d 424, 430, 588 N.E.2d 819.
[2] See *State v. Willard* (2001), 144 Ohio App.3d 767, 777-778, 761 N.E.2d 688.

**{¶11}** R.C. 2917.31(A)(2) provides that "[n]o person shall cause the evacuation of any public place, or otherwise cause serious public inconvenience or alarm, by * * * [t]hreatening to commit any offense of violence." Under the 1973 Committee Comment to H.B. 511, which amended R.C. 2917.31, the overall goal of the offense "inducing panic" was "primarily to avoid the harm which may result from panic. For example, a false bomb threat which causes airport officials to have the terminal cleared * * * [or] deceptively causing a meeting to be cancelled for fear of the safety of those attending, or engaging in a free-for-all fight in a bar which causes the customers to scurry for the exits."

**{¶12}** The state argues that Campbell's actions caused "a serious public inconvenience" because eight police officers had to respond to the scene, which precluded those officers from being available to respond to other emergencies for almost two hours. Further, the state points out that Campbell occupied a 9-1-1 operator's time, precluding that operator from being available to help others in an emergency. But this court has previously held that police officers cannot be inconvenienced within the contemplation of R.C. 2917.31(A) when they are acting within their official capacity.[3] Here, the police officers were simply responding to a report of possible domestic violence at an apartment building. We cannot say that they were "inconvenienced" within the meaning of the inducing-panic statute when they were simply asked to perform their duty of enforcing the law.[4]

**{¶13}** Based upon our review of the record, we conclude that there is no evidence that Campbell threatened to commit any offense of violence that caused the evacuation of a public place or a serious public inconvenience or alarm. The facts in this case simply do not amount to the type of conduct that the legislature was trying to prohibit when it enacted the inducing-panic statute. The residents did not flee the apartment building, nor were they

---

[3] *State v. Isham*, 1st Dist. No. C-020065, 2002-Ohio-5815, ¶ 12.
[4] See *State v. Miller* (1980), 67 Ohio App.2d 127, 426 N.E.2d 497.

evacuated as a result of Campbell's actions. And the police officers were simply performing the duties of their job by responding to the scene of a reported incident of domestic violence.

**{¶14}** While Campbell's actions may not have amounted to inducing panic, we do believe that the circumstances of this case may have justified convictions for other crimes. But Campbell was charged only with inducing panic. Therefore, because we have held that there was insufficient evidence to support his conviction, we sustain his first assignment of error.

**{¶15}** Because of our resolution of the first assignment of error, Campbell's second assignment of error, contesting the weight of the evidence underlying his conviction, is now moot.

**{¶16}** The judgment of the trial court is reversed, and Campbell is discharged from further prosecution in this case.

Judgment reversed

and appellant discharged.

DINKELACKER, P.J., and FISCHER, J., concur.