[Cite as *In re M.A.*, 2016-Ohio-1161.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: M.A., DELINQUENT CHILD | : | **O P I N I O N** |
| | : | |
| | : | **CASE NO. 2015-L-075** |
| | : | |

Juvenile Appeal from the Lake County Court of Common Pleas, Juvenile Division, Case No. 2015 DL 00253.

Judgment: Affirmed in part, reversed in part, and affirmed as modified.

*Charles E. Coulson,* Lake County Prosecutor, *Alana A. Rezaee,* Assistant Prosecutor, and *Eric J. Foisel,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Appellee, State of Ohio).

*Charles R. Grieshammer,* Lake County Public Defender, *Vanessa R. Clapp,* Assistant Public Defender, and *Joseph R. Medici,* Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Appellant, M.A.).

DIANE V. GRENDELL, J.

{¶1} Appellant, M.A., appeals from the judgment of the Lake County Court of Common Pleas, Juvenile Division, ordering him to pay restitution to the Wickliffe City School District, the Wickliffe Police Department, and the Wickliffe Fire Department. The issue to be determined by this court is whether the police, fire department, and a school district are "victims" who suffered economic harm for the purposes of restitution, given that they are governmental entities, when a bomb threat was made, giving rise to a

delinquency finding of Attempted Inducing Panic. For the following reasons, we affirm in part, reverse in part, and affirm as modified the decision of the court below.

{¶2} On February 18, 2015, a Complaint was filed, alleging M.A. to be delinquent of one count of Inducing Panic, in violation of R.C. 2917.31(A)(1), a felony of the second degree if committed by an adult; one count of Making False Alarms, in violation of R.C. 2917.32(A)(1), a felony of the fifth degree if committed by an adult; and one count of Telecommunications Harassment, in violation of R.C. 2917.21(A)(1), a misdemeanor of the first degree if committed by an adult.

{¶3} On March 2, 2015, M.A. admitted to an amended charge of Attempted Inducing Panic, in violation of R.C. 2923.02, a felony the third degree if committed by an adult. The remaining charges were dismissed.

{¶4} A Dispositional Hearing was held on April 2, 2015. M.A. was ordered to serve a term in the Ohio Department of Youth Services, which was suspended. He was also ordered to be held in the Lake County Juvenile Detention Facility for 90 days and placed on probation.

{¶5} A Restitution Hearing was held on May 27, 2015. Prior to the presentation of testimony on the issue of restitution, M.A.'s counsel noted that the only "victims" set forth in the complaint were the Wickliffe City School District, as well as two other private schools, and that "the only restitution order that can be given is to Wickliffe City Schools."[1] He also argued that compensation should not be ordered for "the ordinary cost of doing government business."

{¶6} Joseph Spiccia, the superintendent of the Wickliffe City School District, testified about the events giving rise to the present matter, which occurred on February

---

1. No restitution relating to the private schools was ordered, as no witnesses from these schools testified.

17, 2015. On that date, the school received a call from the Wickliffe Police Department indicating that a "nonspecific" bomb threat had been made to the schools, resulting in the evacuation of all Wickliffe schools. Regarding the resulting economic loss, he and other school officials determined that losses directly resulting from the bomb threat totaled $4,035.27. This figure related to "personnel and facility financial expense." This included the cost of transporting students, with bus drivers having to be called in, as well as "the cost of overtime, if any, incurred for [the] staff that had to stay and wait for students to be picked up."

{¶7} Fire Chief James Powers testified that on February 17, students evacuated to the fire station where it was necessary to "find a way to get all those children reunited with their parents." Regarding economic harm, he stated: "we had to commit all our resources and the resources of another community to help us with the onslaught of all those students coming over to our station." No additional employees were called in to help and no overtime was incurred, but the employees shifted their duties to help handle the children. The restitution request was for $1,255.25.

{¶8} Lieutenant Pat Hengst, a detective with the Wickliffe Police Department, testified that dispatch had received a call on the afternoon of February 17 that there was a bomb in "the school," with no specific school stated. The police department "incurred the cost of both managing the evacuation and searches and the investigation itself." Hengst compiled a report showing the costs to the Police Department, which totaled $2,730. This figure was based on the hours worked by the officers, including some overtime. He noted that the officers participating were all on duty, with the exception of an officer from the bomb squad.

**{¶9}** Pursuant to a Judgment Entry filed on May 28, 2015, M.A. was ordered to pay restitution to the Wickliffe City School District in the amount of $3,963.27. The court found that $561.15 in restitution was owed to the Wickliffe Fire Department "for the cost of the services of the Chief and two (2) administrators." Finally, it ordered restitution to the Wickliffe Police Department in the amount of $760.50.

**{¶10}** M.A. timely appeals and raises the following assignment of error:

**{¶11}** "The juvenile court erred to the prejudice of the delinquent child-appellant when it ordered restitution payments to several government entities not authorized by restitution statutes in violation of his due process rights, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution."

**{¶12}** While a decision to award restitution is generally evaluated under an abuse of discretion standard of review, the issue raised by M.A. relates to the interpretation and application of the statute to certain entities. Such issues of law are reviewed under a de novo standard. *State v. Fortune*, 11th Dist. Lake No. 2014-L-117, 2015-Ohio-4019, ¶ 16. De novo standards of review have been applied in matters determining who is a victim under the restitution statutes, as well as in deciding what constitutes an "economic loss." *In re Z.N.*, 2015-Ohio-1213, 29 N.E.3d 1016, ¶ 8 (11th Dist.); *State v. Harris*, 2nd Dist. Wood No. WD-14-069, 2015-Ohio-4412, ¶ 8.

**{¶13}** R.C. 2152.20(A)(3) provides that, if a child is adjudicated delinquent, "the court may * * * require the child to make restitution to the victim of the child's delinquent act * * * in an amount based upon the victim's economic loss caused by or related to the delinquent act." It also provides that restitution orders cannot exceed "the amount of the

4

economic loss suffered by the victim as a direct and proximate result of the delinquent act * * *."[2]

{¶14} Economic loss is defined under R.C. 2152.02(L) as:

[A]ny economic detriment suffered by a victim of a delinquent act * * * as a direct and proximate result of the delinquent act * * * and includes any loss of income due to lost time at work because of any injury caused to the victim and any property loss, medical cost, or funeral expense incurred as a result of the delinquent act * * *. 'Economic loss' does not include non-economic loss or any punitive or exemplary damages.

{¶15} Non-economic loss is defined under R.C. 2152.02(DD) as "nonpecuniary harm suffered by a victim of a delinquent act * * * as a result of or related to the delinquent act" which includes items such as pain and suffering, loss of consortium, mental anguish, and other intangible losses.

{¶16} The statute does not define victim. This court has noted that "[a] victim of a crime is defined as the person or entity that was the 'object' of the crime." (Citations omitted.) *State v. Pietrangelo*, 11th Dist. Lake No. 2003-L-125, 2005-Ohio-1686, ¶ 15.

{¶17} M.A. argues that his due process rights were violated through the order to pay restitution. The State notes that no such constitutional violation was raised below and thus, cannot be raised here. As this court has previously explained, failure to object at the restitution hearing on constitutional grounds rather than statutory grounds results

---

2. Similarly, the adult restitution statute, R.C. 2929.18(A)(1) provides that a court imposing sentence on a felony offender may require the offender to make restitution "to the victim of the offender's crime * * * in an amount based on the victim's economic loss." The definition of economic loss in R.C. 2929.01(L) is the same as that described in the juvenile statute. Thus, case law from non-juvenile criminal cases relating to the issues raised in this case is applicable.

in waiver of the constitutional arguments and allows this court to consider only statutory arguments. *Z.N.*, 2015-Ohio-1213, at ¶ 6.

**{¶18}** Regarding the restitution ordered to the Wickliffe Police and Fire Departments, M.A. argues that they were not victims of the crime, nor did they suffer any economic loss. He contends that the costs they expended were the "ordinary cost of doing government business."

**{¶19}** We do not find that the Police and Fire Departments were victims of the crime that suffered an economic loss as contemplated under R.C. 2152.20(A)(3). As an initial matter, the State concedes that the Wickliffe Fire Department "although seriously inconvenienced and economically harmed, was not a 'victim' entitled to restitution," based on the fact that the employees who were already on duty merely had to perform different tasks than they otherwise would if not for the bomb threat.

**{¶20}** Importantly, while government entities have been considered victims of a crime in situations where money or property belonging to the entity were stolen or destroyed, scenarios where these entities are merely performing their duties in responding to emergencies or crimes do not entitle them to restitution. *State v. Samuels*, 4th Dist. Washington No. 03CA8, 2003-Ohio-6106, ¶ 5 (government can be a victim "if appellant embezzled money from a county department, or vandalized one of its vehicles"). "[T]he majority of state courts * * * have likewise concluded that the government is not a victim entitled to restitution where public moneys are expended in pursuit of solving crimes, as these expenditures represent normal operating costs." (Citation omitted.) *Pietrangelo*, 2005-Ohio-1686, at ¶ 17. Similarly, the argument that a police department "that expends funds and/or other resources in responding to a false

alarm should be reimbursed somehow for its expenditure of resources" has been rejected given the legislature's use of the word "victim" and failure to provide for restitution in such circumstances. *State v. Christian*, 4th Dist. Montgomery No. 25256, 2014-Ohio-2672, ¶ 128, *vacated on other grounds*, 143 Ohio St.3d 417, 2015-Ohio-3374, 38 N.E.3d 888.

**{¶21}** Here, it cannot be said that the Police and Fire Departments were "victims." While they responded to the bomb threat, it was not made against them and was not the type of crime discussed above where actual harm was done to the Departments themselves, through damage or theft. They merely performed services in aiding the public and/or investigating crime, which is well within their ordinary duties. Had the legislature anticipated reimbursement for police response to crimes or for similar emergency response, it could have included this in the restitution statute, which it did not do. *See Pietrangelo* at ¶ 17.

**{¶22}** While it is the case that the Wickliffe Police Department expended some funds due to overtime work, the majority of these hours were in investigating the crime and finding the suspect after the schools had already been cleared. The fact that the Police Department chose to expend overtime pay to determine who had made the bomb threat is not something M.A. should be responsible for and no case law is cited by the State that overtime funds expended are not part of normal operating costs. Any additional overtime funds, even if they were considered an economic loss, do not change the fact that the Police Department was not a victim as the statute has been interpreted. *State v. Jones*, 7th Dist. Jefferson Nos. 08 JE 20 and 08 JE 29, 2010-Ohio-

7

2704, ¶ 47 ("the government is not a victim under the restitution statute merely because it expended funds in some manner as a result of the defendant's offense").

{¶23} The State cites two cases that "indirectly condone" the award of restitution to a police department relating to responses to similar offenses. *State v. Wills*, 2nd Dist. Montgomery No. 25357, 2013-Ohio-4507, and *State v. Sommer*, 154 Ohio App.3d 421, 2003-Ohio-5022, 797 N.E.2d 559 (5th Dist.). However, the issue raised here, whether the police department can be a victim and suffer an economic loss in responding to a crime, was not raised for consideration by the appellate court in those cases, which related to the amount of restitution and the ability to pay, and we do not find them applicable.

{¶24} We recognize concerns with the increasing number of bomb threats being made throughout the country. It goes without saying that such threats can have an impact on government entities' resources, especially entities that provide emergency response services. Such policy considerations, however, are solely for the legislature to address. *State ex rel. Cincinnati Enquirer v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 21 (the legislature "is the ultimate arbiter of public policy"). At present, the restitution statute's use of the term "victim" limits the ability for such entities to recover restitution, especially when viewed in light of case law interpreting a "victim" as the "object of a crime."

{¶25} M.A. next raises similar arguments regarding the Wickliffe City School District, including that it was not the victim and its actions responding to the threat were "the ordinary cost of doing government business." At oral argument in this matter,

8

M.A.'s counsel conceded that the school was owed restitution. We will still consider the merits of the argument to adequately address the issues raised in the briefs.

**{¶26}** As an initial matter, the State asserts that M.A. invited error by arguing at the restitution hearing that the Wickliffe City School District could be ordered to pay restitution and thus, cannot raise this error on appeal. "Under the invited-error doctrine, '[a] party will not be permitted to take advantage of an error which he himself invited or induced.'" (Citation omitted.) *State v. Bey*, 85 Ohio St.3d 487, 493, 709 N.E.2d 484 (1999).

**{¶27}** At the restitution hearing, counsel for M.A. stated that "the values [of restitution] seem appropriate" but restitution could only be given to victims, which are "defined by the original complaint in the case." He then noted that the complaint indicated the Wickliffe City School District was a victim, but did not include the Police and Fire Departments. He explained: "[t]o that extent, we maintain that the only restitution that can be sought is the restitution from the Wickliffe City Schools." Counsel later noted in its opening argument that there was a question of whether government business can give rise to restitution, that "the only party that is owed restitution for any apparent economic harm is the victim," and that the "complaint set out who the victims in this case are," referencing the Wickliffe City School District. Finally, he stated "on that basis we maintain that the only restitution order that can be given is to Wickliffe City Schools."

**{¶28}** Under these circumstances, the repeated references to the Wickliffe City School District as the victim creates some question as to whether M.A. can now claim it is not a victim. While he may have been stating that the School District was the only

9

potential victim of the three entities who sought restitution, if he took issue with the schools' status as a victim, he could have protested this at that time. At the very least, these statements created confusion as to whether M.A. conceded that Wickliffe City School District was entitled to restitution or at least classification as a victim.

{¶29} Even presuming there was no invited error, unlike the Police and Fire Departments, we cannot say that the school was not entitled to recover restitution. Despite M.A.'s protestations to the contrary, it is difficult to say that the schools were not a victim. While the Police and Fire Departments were merely responding to a crime/emergency, the school itself was threatened and is not generally in the business of responding to criminal activity. This places it more in the scope of the cases discussed above, where it has been held a government entity can be considered a victim for the purposes of restitution when it is personally damaged. *Samuels*, 2003-Ohio-6106, at ¶ 5.

{¶30} While schools must have a plan to deal with security threats, argued by M.A. as evidence that responding to a bomb threat is ordinary government business, it does not follow that the expenses associated with handling a bomb threat should be the burden of the taxpayer rather than of the individual who caused these expenses. The need for a school to be prepared and the financial responsibility for a criminal act are two entirely different matters. Further, there was testimony presented as to additional expenses that were not typical for the school, including the need to provide transportation and additional availability of employees for the latchkey program to supervise students. The amount of expenses related to the school's restitution is not directly challenged here.

{¶31} M.A. cites various cases relating not to restitution but to the offense of Inducing Panic to establish that a government entity cannot be "inconvenienced" under the statute. *State v. Campbell*, 195 Ohio App.3d 9, 2011-Ohio-3458, 958 N.E.2d 622 (1st Dist.); *State v. Isham*, 1st Dist. Hamilton No. C-020065, 2002-Ohio-5815. These cases again relate to police officers' responses rather than the threatened entity itself, which in this case was the school.

{¶32} Given the preceding analysis, the awards of restitution in favor of the Wickliffe Police Department and the Wickliffe Fire Department are reversed. The award of restitution in favor of the Wickliffe City School District is affirmed. Accordingly, the court's judgment is modified to require M.A. to pay only the restitution of $3,963.27 to the Wickliffe City School District and to remove the additional restitution requirements.

{¶33} The sole assignment of error is with merit, in part.

{¶34} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, Juvenile Division, ordering M.A. to pay restitution to the Wickliffe City School District, the Wickliffe Police Department, and the Wickliffe Fire Department, is affirmed in part, reversed in part, and affirmed as modified. Costs to be taxed against the parties equally.

TIMOTHY P. CANNON, J.,

THOMAS T. WRIGHT, J.,

concur.

11