The State of Ohio [CITY OF FAIRBORN], Appellee,

v.

SEMLER, Appellant.

[Cite as *Fairborn v. Semler* (1993), 90 Ohio App.3d 369.]

Court of Appeals of Ohio,
Greene County.

No. 92–CA–0090.

Decided Sept. 17, 1993.

*Joseph W. Stadnicar,* Fairborn City Prosecutor, for appellee.

*Craig N. Procario,* for appellant.

GRADY, Presiding Judge.

Larry A. Semler appeals from his conviction for disorderly conduct in violation of Section 573.03 of the Codified Ordinances of the City of Fairborn. Semler

argues that his conviction is not supported by the weight and sufficiency of the evidence.

The charge of disorderly conduct was tried to the court. The facts found by the trial court and stated in its decision and judgment entry of conviction are as follows:

"Defendant was the passenger in a car driven by James Pierson. While driving the defendant home, Pierson's car was stopped outside defendant's residence in a DUI arrest at approximately 2:00 o'clock a.m., on December 7, 1991. Three police officers in three separate cruisers were present at the scene. As Officer Helman began questioning Pierson, the defendant started to exit the car. When told to stop, the defendant informed Officer Helman he was going into his house and he couldn't stop him. Officer Helman observed that the defendant's eyes were bloodshot; his speech was slurred; he had poor balance and the strong odor of alcohol. Defendant was loud and his demeanor was angry. Officers Helman, Plemmons, and Cockrell observed the defendant and each determined he was extremely intoxicated. After Officer Helman asked him several times for identification, the defendant finally gave his social security number and birth date. The defendant continued to argue and shout about his rights in an abusive, profane, belligerent manner while Officer Helman was trying to interview Mr. Pierson. After ascertaining that defendant lived at that address, Mr. Semler was instructed to go into his house. As he headed toward his house, the defendant kept turning around to argue with the police officers about his rights. Officer Helman instructed him three times to go inside his house; Officer Plemmons told him an additional five or six times; and Officer Cockrell told him three or four times. After reaching his house and shutting the screen door, the defendant came out again, yelling and using profanity. The houses in defendant's neighborhood are close together, with approximately 15 to 20 feet between houses. The lot sizes are 60 feet wide. Plemmons told the defendant he was under arrest. The defendant re-entered the house and locked the storm door. He said, 'I dare you to do anything now. I'm in my house.'

"After telling him to open the door, Officer Plemmons pushed hard, forcing the door open. Officers Plemmons and Cockrell informed the defendant he was under arrest. The defendant passively resisted when the officers were trying to handcuff him, became rigid and pulled away. Officer Helman joined the other officers in forcing Mr. Semler to the ground. He was then handcuffed and taken to the cruiser."

Section 573.03(b)(1) of the Fairborn Municipal Code ("Section 573.03[b][1]"), disorderly conduct, is identical to R.C. 2917.11(B)(1) and provides:

"No person, while voluntarily intoxicated shall do either of the following:

"In a public place or in the presence of two or more persons, engage in conduct likely to be offensive or to cause inconvenience, annoyance, or alarm to persons of ordinary sensibilities, which conduct the offender, if he were not intoxicated, should know is likely to have such effect on others[.]"

Semler argues that he cannot be convicted of disorderly conduct unless the words he used were, by their very utterance, likely to inflict injury or provoke the average person to an immediate retaliatory breach of the peace. See *State v. Hoffman* (1979), 57 Ohio St.2d 129, 11 O.O.3d 298, 387 N.E.2d 239. Semler told the officers, " * * * you f____ing can't tell me what to do," and "F___ you, . . . this is bull____," screaming the words at them. Semler argues that while he used obscene language it was not directed at any officer in particular but only expressed his opinions about what was happening to him. Therefore, it was not likely to incite the average person to retaliate and breach the peace, and was insufficient to support his conviction.

Semler's argument and the authorities upon which he relies concern the conduct necessary to violate R.C. 2917.11(A)(2), the section of the disorderly conduct statute that deals with the content or nature of speech, *i.e.*, what is said. Semler was not, however, convicted of violating R.C. 2917.11(A)(2). He was convicted of violating the Fairborn equivalent of R.C. 2917.11(B)(1). A violation of that provision occurs anytime a person while intoxicated and in a public place or in the presence of others engages in any conduct which is likely to be offensive or annoying to persons of ordinary sensibilities. A violation of R.C. 2917.11(B)(1) does not necessarily depend on the particular content of the speech involved.

There is no dispute that the evidence is sufficient to prove that Semler was intoxicated. Also, while he was outside his house, he was in a public place. The only issue is whether Semler's conduct there was "likely to be offensive or to cause * * * annoyance or alarm to persons of ordinary sensibilities," in violation of Section 573.03(b)(1).

If Semler's conviction was based on the content of his speech, it could not stand. No matter how rude, abusive, offensive, or vulgar words may be to another person, one who uses them may not be convicted of a criminal offense for his utterance unless they are "fighting words," that is, words which by their very utterance are likely to inflict injury or to provoke the average person to an immediate, retaliatory breach of the peace. *State v. Hoffman, supra.* Semler's use of an old English four-letter functional verb in the imperative mood, obnoxious as it was, is not of that character. Perhaps it was once, but it has

changed with the times. As a wag has observed, in today's world Hester Prynne would get, at most, a C+.

It was Semler's actions, not the content of his speech, that produced his conviction. The trial court found that his loud and angry words, shouted in a residential neighborhood where houses are in close proximity, at 2:00 a.m., violated the ordinance. We agree. The noise and commotion he created were likely to cause annoyance or alarm to persons of ordinary sensibilities who lived nearby and heard them. The same would be true had he shouted the words of "Mary Had a Little Lamb," though his condition and the surrounding circumstances probably inclined him to use more colorful and forceful terms.

In addressing claims involving both the weight and sufficiency of the evidence, the weight to be given the evidence, including credibility of witnesses, is a question for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. An appellate court abuses its discretion by substituting its judgment for that of the trier of fact as to the weight and sufficiency of the evidence. *State v. Nicely* (1988), 39 Ohio St.3d 147, 156, 529 N.E.2d 1236, 1243. The evidence presented in this case, if believed, would permit a rational trier of act to find the essential elements of the crime of disorderly conduct proved beyond a reasonable doubt.

The assignment of error is overruled. The judgment of the trial court will be affirmed.

*Judgment affirmed.*

BROGAN and FREDERICK N. YOUNG, JJ., concur.