The STATE of Ohio, Appellee,

v.

HOLMES, Appellant.

[Cite as *State v. Holmes* (1998), 129 Ohio App.3d 735.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 16865.

Decided Sept. 11, 1998.

*F. Jay Newberry,* Montgomery County Prosecuting Attorney, for appellee.

*John H. Rion,* for appellant.

---

FAIN, Judge.

Defendant–appellant Sean K. Holmes appeals from his conviction, following a bench trial, of disorderly conduct, in violation of Kettering Ordinances 648.04. Holmes contends that there is insufficient evidence to support the conviction. Specifically, Holmes was charged with having caused inconvenience, annoyance or alarm to another by engaging in violent or turbulent behavior, and he contends

that there is insufficient evidence in the record to establish, beyond reasonable doubt, that he caused inconvenience, annoyance, or alarm to anyone. We agree. Although it is possible that Holmes's conduct in screaming, at the top of his lungs, his anger at a police officer at 2:00 a.m., sixty feet from his apartment complex, may have inconvenienced, annoyed, or alarmed residents of the complex, we conclude that the evidence in the record falls short of establishing that fact beyond reasonable doubt. Accordingly, the judgment of the trial court is reversed, and Holmes is discharged.

## I

Holmes was returning home when he was stopped at 2:00 a.m. one early night in June 1997. He was stopped as he pulled his car into the parking lot of his apartment complex, just sixty feet from the nearest apartment building. Kettering Police Officer Kathleen Zaborowski cited Holmes for driving with one burned-out headlight.

Holmes was irate. Zaborowski and another officer, Jeffrey Geckler, who was also on the scene, testified that Holmes was screaming at the top of his lungs at Zaborowski. His initial comment was "Give me my fucking ticket." Apparently, Holmes's range of profanity on that date was limited, consisting of various forms of the verb "to fuck," uttered twenty to thirty times.

There is no evidence in the record that Holmes ever threatened Zaborowski. After Zaborowski finally gave Holmes his written citation, he walked away. After Holmes was ten to fifteen feet away, he turned, took two steps toward Zaborowski and again began shouting obscenities.

Although Zaborowski had asked Geckler, who showed up during the initial interchange, to stick around, she did not indicate that she felt threatened, alarmed, inconvenienced, or annoyed. Although Officer Geckler testified that he "thought there was a threatening encounter when [he] exited [his] car," there is no evidence to support a finding, beyond a reasonable doubt, that Holmes's language or action constituted a threat toward either officer.

Geckler cited Holmes with disorderly conduct, in violation of Kettering Ordinances 648.04. Specifically, Geckler averred that Holmes "did * * * cause inconvenience, annoyance or alarm to another by engaging in fighting, in threatening harm to persons or property or in violent or turbulent behavior." Following a bench trial, Holmes was found guilty as charged and sentenced accordingly. From his conviction and sentence, Holmes appeals.

## II

Holmes's sole assignment of error is as follows:

"The evidence was insufficient to support the disorderly conduct conviction because there was no evidence that appellant inconvenienced, annoyed or alarmed anybody by fighting or threats or by engaging in violent or turbulent behavior."

The state argues that Holmes's verbal tirade against Officer Zaborowski, at the top of his lungs, constituted violent or turbulent behavior that caused inconvenience, annoyance, or alarm to residents of the apartment complex. There is no direct evidence that anyone was inconvenienced, annoyed, or alarmed by Holmes's tirade. Holmes called two witnesses. One of these testified that he could not hear the verbal exchange outside between Holmes and Officer Zaborowski; the other testified that she could hear it, but did not indicate that she was inconvenienced, annoyed, or alarmed as a result.

The state argues that it should be inferred that Holmes's screaming at the top of his lungs, at two o'clock in the morning in early June, sixty feet away from an apartment building, caused inconvenience, annoyance, or alarm to residents of the apartment building. It is certainly possible that one or more residents may have been inconvenienced, annoyed, or alarmed. However, in our view, this evidence falls short of establishing, beyond a reasonable doubt, that any residents were, in fact, inconvenienced, annoyed, or alarmed.

The state cites *State v. Oree* (Apr. 5, 1996), Portage App. R. 95–P–0078, unreported, 1996 WL 205586. In that case, the defendant and another individual had been observed "pushing, shoving and screaming at one another," in the midst of a crowd of several hundred people who had fled from a bar in which a shot had just been fired. In that case, the court of appeals held that under the circumstances, "undoubtedly, appellant's actions exacerbated the volatile situation and caused inconvenience to others within the crowd."

In our view, *State v. Oree, supra,* is distinguishable. In that case the defendant was not merely yelling, but was engaged in pushing and shoving with another individual, in the midst of a crowd of a couple of hundred individuals who had fled from the bar. In that case, there is no doubt that the defendant's alarming behavior was observed by persons nearby, giving rise to a strong inference arose that persons nearby were inconvenienced or alarmed as a result of the defendant's conduct.

In the case before us, it is a matter of speculation whether any of the residents in the apartment complex were inconvenienced, alarmed, or annoyed. It is possible that residents were awakened from sleep, or were kept from going to sleep, as a result of Holmes's verbal tirade and were consequently inconvenienced or annoyed, but we cannot conclude, from the evidence in this record, that that fact was established beyond a reasonable doubt.

This case is also distinguishable from *Fairborn v. Semler* (1993), 90 Ohio App.3d 369, 629 N.E.2d 481, in which a disorderly conduct conviction was affirmed. In that case, the defendant was charged with having violated Fairborn Municipal Code 573.03(b)(1), which provided as follows:

"No person, while voluntarily intoxicated shall do either of the following:

"In any public place, or in the presence of two persons, engage in conduct *likely to be offensive or to cause inconvenience, annoyance, or alarm to persons of ordinary sensibilities,* which conduct the offender, if he were not intoxicated, should know is likely to have such an effect on others." (Emphasis added.)

Thus, in *Semler, supra,* it was sufficient proof of the offense charged to show that the defendant's conduct was of a nature likely to cause inconvenience, annoyance or alarm to others. In the case before us, however, the state was required to prove, beyond a reasonable doubt, that Holmes's conduct actually did, in fact, cause inconvenience, annoyance or alarm to another.

We do not condone Holmes's conduct. Furthermore, if there were any evidence in this record from which it could be found, beyond reasonable doubt, that one or more residents of the apartment complex were, in fact, annoyed or inconvenienced by Holmes's tirade, we would affirm his conviction. However, from the evidence in this record, we conclude that the state failed to meet its burden of proof beyond reasonable doubt. Holmes's sole assignment of error is sustained.

### III

Holmes's sole assignment of error having been sustained, the judgment of the trial court is reversed, and Holmes is discharged.

*Judgment reversed.*

BROGAN and GRADY, JJ., concur.