[Cite as *State v. Ritchie*, 2018-Ohio-767.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27526 |
| | : | |
| v. | : | Trial Court Case No. 2017-CRB-298 |
| | : | |
| DEREK J. RITCHIE | : | (Criminal Appeal from Municipal Court) |
| | : | |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of March, 2018.

. . . . . . . . . . .

Prosecuting Attorney, Montgomery County Municipal Court, Eastern Division, 6111 Taylorsville Road, Huber Heights, Ohio 45424
        Attorney for Plaintiff-Appellee

LUCAS W. WILDER, Atty. Reg. No. 0074057, 120 West Second Street, Suite 400, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Derek Ritchie was, following a bench trial, convicted of disorderly conduct as a fourth degree misdemeanor. Ritchie asserts that the verdict is not supported by sufficient evidence and, further, that the verdict is against the manifest weight of the evidence. We conclude that the evidence is sufficient and that the conviction is not against the manifest weight of the evidence. Accordingly, Ritchie's conviction will be affirmed.

**Facts**

{¶ 2} Ritchie, on February 24, 2017, attended a concert at a music club called Odd Bodies located on Burkhardt Road in Riverside, Ohio. The facts culminating in Ritchie's arrest were recounted by Riverside Officer Sewert and by Richard Eckhardt who is a part owner of Odd Bodies.

{¶ 3} Eckhardt encountered Ritchie near a Family Video which is located in the same shopping center as Odd Bodies. Eckhardt testified that Ritchie "seemed a little disoriented" and that "[h]e was laying (sic) down at one point." Eckhardt asked Ritchie if he needed assistance prompting Ritchie to reply that "his girlfriend had been kidnapped and she was inside." Eckhardt, in an effort to assuage Ritchie's concern, informed him that the show would conclude in forty-five minutes or so and that if your girlfriend is inside, she will exit the club at that time. Ritchie, in a non-responsive fashion, stated that his "girlfriend's mom was the clerk of courts." Eckhardt also indicated that Ritchie's cell phone kept ringing with Ritchie "screaming at his phone for somebody to stop calling him."

{¶ 4} Ritchie, at this juncture and for no apparent reason, turned his attention to

females in the shopping center parking lot. Eckhardt recounted that Ritchie, using a loud voice, began to yell at females that "your p * * * *'s dirty" and "[y]our p * * * *'s stretched out." This language caused a man, who was with a female companion, to confront Ritchie. Eckhardt positioned himself between Ritchie and the man, and told the man that "[t]his guy's not right at the moment. Just get in your car and take off and I'll take care of this guy." This defused the situation.

{¶ 5} Eckhardt further testified that Ritchie directed the "same type of profane language" at an older woman in a parked car who Eckhardt surmised was waiting to pick up individuals attending the concert. Eckhardt indicated that he looked at the woman, held up his hand, and told her "it's going to be okay."

{¶ 6} Eckhardt, at some point, observed two nearby Riverside officers, and he maneuvered Ritchie toward the officers. Eckhardt, upon reaching the officers, relinquished control of Ritchie to the officers.

{¶ 7} Officer Sewert testified that Officer Stafford and he were dispatched to Odd Bodies based upon someone calling dispatch and reporting that "a female was being raped or assaulted inside the music club…" However, upon contact with Odd Bodies staff, "they could not locate any type of altercation inside the club." Sewert and Stafford, after investigating the dispatch, remained in the shopping center parking lot apparently because of the large concert crowd.

{¶ 8} Sewert testified that while so positioned he observed a white van exit the Odd Bodies' parking lot, make an "abrupt right turn into… [another] parking lot[,]" with the van going "through… [a] median bottoming out the vehicle." The van, according to Sewert's account, "proceeded to the back parking lot of a business directly to the east of [Odd

Bodies]." Sewert indicated that Stafford and he followed and located the van. The van was leaking "fluid on the ground[,] but "[n]obody was around the vehicle."

{¶ 9} The officers then went to a location in front of Odd Bodies. Eckhardt, as the officers were so positioned, approached and turned Ritchie over to the officers. Sewert testified that Ritchie, upon coming into contact with the officers, "advised [that] he was supposed to be watching out for a girl…[,]" indicating that the girl "was near a tour bus wearing a long dress." Ritchie, evidently referring to the girl he was entrusted to protect, stated "[s]he is so f * * * * * * * gullible and she is so f * * * * * * *naïve." Sewert noted that as Ritchie was speaking he could "detect a strong odor of an alcoholic beverage emitting from [Ritchie's] breath, [that he had] blood… shot, glassy eyes, [and] slurred speech." Sewert further testified that Ritchie's "motor skills appeared to be off as he was dropping items as he was removing them from his wallet[,]" he repeated "things and [was] unable to follow simple requests." Sewert, based upon these observations, opined that Ritchie was intoxicated.

{¶ 10} Ritchie was asked if he was the person who had called dispatch regarding a female in distress with Ritchie indicating that he had called dispatch on two occasions. The officers, evidently suspecting that Ritchie had been the driver of the abandoned van, informed Ritchie that he needed to move the van. Ritchie responded by indicating he had permission to park the van where it was parked.

{¶ 11} Sewert further recounted, though it is a bit unclear when this occurred within the chronology of events, that Ritchie used "racial slurs[,]" with Sewert indicating that the racial slurs were disturbing. Sewert testified that he informed Ritchie he would "call a taxi cab [for him], offered to assist in calling a tow company to get the vehicle removed,

all of which were ignored." Sewert further testified that Stafford informed Ritchie that he had "to cooperate and calm down, [and] cease and desist his behavior[,]" but Ritchie, despite the warning, continued his behavior by "yell[ing] at people… at Odd Bodies." Sewert, at this juncture, placed Ritchie under arrest for disorderly conduct.

{¶ 12} Sewert completed and signed under oath a Crim.R. 3 complaint charging Ritchie with disorderly conduct in violation of R.C. 2917.11 as a fourth degree misdemeanor. The complaint states in relevant part as follows:

> … Ritchie was voluntarily intoxicated in public… Ritchie refused to cooperate with Officer's (sic) and on multiple occasions, yelled loudly across the street in public, and used racial slurs and profanity in the presence of officers. … Ritchie was warned to cease and desist in his behavior which he did not comply…

Accordingly, the conduct which triggered the disorderly conduct charge is Ritchie's conduct observed by the officers. Further, the complaint, though a statutory subsection is not delineated, charges, based upon the above language, a violation of R.C. 2917.11(B)(1) with the charge, because of the cease and desist language, being a fourth degree misdemeanor under R.C. 2917.11(E)(3)(a).

{¶ 13} The trial court conducted a bench trial on March 23, 2017 with the court making a finding of guilty at the trial's conclusion. The trial court sentenced Ritchie to a jail term of thirty days giving him one day of jail time credit. The trial court did not impose any fine or court costs. Ritchie's counsel requested a stay of the sentence, the trial court overruled this request, and Ritchie has served the remaining twenty-nine days.

**Analysis**

{¶ 14} Ritchie's only assignment of error is as follows:

RITCHIE'S CONVICTION MUST BE OVERTURNED BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION AND IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 15} R.C. 2917.11(B)(1) states in pertinent part as follows:

(B) No person, while voluntarily intoxicated, shall…

(1) In a public place… engage in conduct likely to be offensive or to cause inconvenience, annoyance, or alarm to persons of ordinary sensibilities, which conduct the offender, if the offender were not intoxicated, should know is likely to have that effect on others…

{¶ 16} R.C. 2917.11(E) provides that disorderly conduct is a minor misdemeanor, but it becomes a fourth degree misdemeanor if, among other circumstances, "[t]he offender persists in disorderly conduct after reasonable warning or request to desist." R.C. 2917.11(E)(3)(a).

{¶ 17} A sufficiency of the evidence analysis focuses upon whether the State presented adequate evidence, viewing such evidence in the light most favorable to the State, to allow the conviction to stand. The State has presented sufficient evidence when "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Radford*, 2d Dist. Clark No. 2016-CA-80, 2017-Ohio-8189, ¶ 14, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 18} A manifest weight analysis, in contrast, requires an appellate court to review

the record, weigh the evidence and any reasonable inferences allowed by the evidence, to consider witness credibility, and determine whether the trier of fact, in resolving any evidentiary conflicts, "clearly lost its way and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Radford*, ¶ 15. Though involving different legal concepts, if it is concluded that the verdict is supported by the weight of the evidence, the evidence, by necessity, is legally sufficient. *Id.* ¶ 16 (citations omitted).

{¶ 19} The Ninth District in *City of Akron v. Carter*, 9th Dist. Summit No. 22444, 2005-Ohio-4362, confronted a somewhat similar situation. Carter, while admittedly intoxicated, took a position in a bowling alley parking lot at approximately 10:15 p.m. and began repeatedly yelling "F * * * you, f * * * you, f * * * you." *Id.*, ¶ 5. An officer, who happened to be nearby, approached. This prompted Carter's friend to warn him of the approaching officer. Carter responded by yelling "F * * * the police." *Id.*, ¶ 6. Carter was arrested for disorderly conduct in violation of R.C. 2917.11(B)(1) with the trial court, following a bench trial, finding Carter guilty.

{¶ 20} The appellate court found that Carter's conviction was supported by sufficient evidence and it was not against the manifest weight of the evidence with the court reasoning as follows:

[Carter's] conduct… in a bowling alley parking lot while patrons came and went, coupled with his friend's inability to calm him down and stop his yelling… would permit a rational trier of fact to find that the essential elements of the crime… had been proven beyond a reasonable doubt.

*Carter* at ¶ 12 (citation omitted).

{¶ 21} We, in *City of Fairborn v. Semler*, 90 Ohio App.3d 369, 629 N.E.2d 481 (2d Dist. 1993), had an opportunity to deal with a sufficiency argument within the context of an ordinance identical to R.C. 2917.11(B)(1). Semler, while extremely intoxicated in front of his home at 2:00 a.m., became embroiled in a loud confrontation with police officers who were investigating whether his friend, who had driven Semler home, was driving while intoxicated. The trial court found that Semler's loud and angry words, occurring at 2:00 a.m. in a residential neighborhood where the homes are close together, constituted disorderly conduct. We agreed stating that "[t]he noise and commotion [Semler] created were likely to cause annoyance or alarm to persons of ordinary sensibilities who lived nearby and heard them." *Id.* at 372. In response to Semler's contention that words alone are not sufficient to constitute a violation of the provision at issue, we stated "[i]t was Semler's actions, not the content of his speech, that produced his conviction." *Id.*

{¶ 22} We, turning to the pending case, note there is certainly sufficient evidence that Ritchie was voluntarily intoxicated, and that Ritchie's conduct occurred in a public place. The sufficiency questions, therefore, are whether the conviction is supported by sufficient evidence that Ritchie engaged in conduct likely to be offensive or to cause inconvenience, annoyance, or alarm to individuals with ordinary sensibilities, whether the evidence is sufficient that Ritchie, if sober, would have realized that his conduct would likely have the indicated effect on others, and whether, turning to the enhancement element, Ritchie persisted in the conduct after a reasonable warning or request to stop. We conclude, keeping in mind, by virtue of the Crim.R. 3 complaint, that the conduct at issue is Ritchie's interaction with Officers Sewert and Stafford, that Ritchie's use of racial

slurs constitutes conduct that a reasonable trier of fact could conclude would likely be offensive to persons of ordinary sensibilities, and that Ritchie, if sober, would have recognized that his conduct would be offensive to individuals with ordinary sensibilities. Further, a reasonable trier of fact could reasonably conclude that Ritchie persisted in conduct violative of R.C. 2917.11(B)(1) after receiving Stafford's warning.

{¶ 23} Finally, we, turning to Ritchie's manifest weight contention, cannot conclude that the trial court, acting as the trier of fact, clearly lost its way, and, by doing so, created such a miscarriage of justice that the conviction must be reversed and a new trial ordered.

### Conclusion

{¶ 24} The trial court's judgment is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies mailed to:

Prosecuting Attorney, Montgomery County Municipal Court, Eastern Division
Lucas W. Wilder
Hon. James A. Hensley, Jr.