[Cite as *I Love This Bar, L.L.C. v. Ohio Liquor Control Comm.*, 2022-Ohio-3509.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

I Love This Bar, LLC,                            :

      Appellant-Appellant,              :

                                           No. 21AP-111

v.                                                :            (C.P.C. No. 20CV-5928)

Ohio Liquor Control Commission,        :            (REGULAR CALENDAR)

      Appellee-Appellee.                   :

D E C I S I O N

Rendered on September 30, 2022

**On brief:** *Cassone Law Offices, LLC*, and *Joshua J. Brown*, for appellant. **Argued:** *Joshua J. Brown*.

**On brief:** *Dave Yost*, Attorney General, and *Joseph E. Schmansky*, for appellee. **Argued:** *Charles E. Febus*.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Appellant, I Love This Bar, LLC, appeals from a February 19, 2021 decision and judgment issued by the Franklin County Court of Common Pleas. In that judgment, the trial court affirmed an August 21, 2020 order of appellee, Ohio Liquor Control Commission ("commission"), finding appellant in violation of Ohio Adm.Code 4301:1-1-52(B)(1) ("Rule 52"). Because the trial court abused its discretion in finding that there was reliable, probative, and substantial evidence supporting the commission's order, we reverse.

**Facts and Procedural History**

{¶ 2}    Appellant owns a bar/restaurant known as the Park Street Cantina in an area known as the Arena District in Columbus, Ohio.  On May 16, 2020, agents of the Ohio Investigative Unit were in the Arena District monitoring compliance with a May 14, 2020 "Dine Safe Order" issued by the director of the Ohio Department of Health.[1]  That order was issued in conjunction with the reopening of restaurants, bars, and similar establishments following shutdowns caused by the COVID-19 pandemic.

{¶ 3}    At approximately 10:35 p.m., agents entered an outdoor covered patio area of appellant's business premises and observed that it was crowded with patrons in close proximity to one another.  Most of the patrons were not seated.  The agents did not observe any of appellant's employees wearing masks.  Some of the patrons were dancing.  Because the agents believed that the conditions they observed violated the Dine Safe Order, they issued appellant a citation under Ohio Adm.Code Emergency Order 4301:1-1-13.  A few days later, the agents realized that Emergency Order 4301:1-1-13 was inapplicable to appellant's business premises.  Therefore, an agent returned to appellant's business premises on May 19, 2020 and reissued the citation under Rule 52.  The conditions at appellant's business premises on May 16, 2020 remained the basis for the Rule 52 citation.

{¶ 4}    On July 28, 2020, the commission mailed appellant a notice of hearing that alleged as follows:

> On or about Saturday, May 16, 2020, you, your agent(s), and/or employee(s) knowingly and/or willfully allowed and/or engaged in improper conduct, to wit: recklessly caused inconvenience, annoyance, or alarm to another by creating a condition that presents a risk of illness, by an act or acts that served no lawful and reasonable purpose of the permit holder in and upon the permit premises in violation of Ohio Admin. Code 4301:1-1-52(B)(1) ("allowing persons to engage in disorderly activities").

(Feb. 19, 2021 Decision & Entry at 1.)

{¶ 5}    The commission held an evidentiary hearing on August 20, 2020.  In support of the citation, the state primarily relied on the testimony of agent Nathan Wathey, agent

---

[1] The Ohio Investigative Unit is part of the Ohio Department of Public Safety and is tasked with enforcing Ohio's liquor code.

Victoria Aumend, Infectious Disease Consultant, Gary Trentman, various pictures taken by Wathey, a diagram of appellant's business premises, and the agents' written investigative report.

{¶ 6}  Wathey testified that on the evening of May 16, 2020, he and Aumend were monitoring bars in the Arena District to determine whether the establishments were complying with the Dine Safe Order.  They were specifically looking to see whether patrons were socially distanced, seated, and wearing masks as required by the Dine Safe Order.  He and Aumend observed that appellant's patio area was crowded and, therefore, they decided to visit the premises.  He further testified as follows:

> I observed that none of the employees were wearing masks.  The bar was very crowded.  There was people on the actual dance floor dancing that night.  When we went into the actual premises, it was very crowded.  At one point I looked over my shoulder and looked back, and I was not able to see Agent Aumend, because the portions of the crowd was so thick.

(Tr. at 14.)

Wathey identified his investigative report, which stated that the agents were "looking for noncompliance with Dr. Amy Acton and Governor Mike DeWine's social distancing orders.  Permit premises were to ensure 6' feet distancing of all tables, patrons, and employees.  Parties of ten or less were to be at a table, and not congregating/co-mingling outside of that."  The report further stated that "[m]ost all of the patrons inside the location were standing.  Many were congregating with people at the bar."  The report added:

> Agents observed approximately 60 patrons inside the patio.  The whole front bar was lined with patrons.  Some were seated at the bar, while others were standing.  Few were seated at tables.  The majority were standing in close proximity to each other.  Others were walking around, while others were dancing in-between the bar and tables.  AAIC Aumend had a difficult time walking through the crowd to get to the other side of the bar.

(Ohio Dept. of Public Safety, Investigative Report at 2; Ex. C3.)

Wathey also identified various pictures he took that evening of the patio area.  He further stated that neither the patrons nor appellant's employees were wearing masks.  Notably, Wathey did not testify that he, Aumend, any patrons, or anyone else at appellant's

business premises at the time indicated that the conditions at the bar caused them any inconvenience, annoyance, or alarm.

{¶ 7} Aumend also testified about her observations of appellant's business premises on the evening of May 16, 2020. In essence, Aumend testified that she observed the same conditions described by Wathey. The patio area was crowded without social distancing and most of the patrons were not seated. The bartenders were not wearing masks. She testified that part of the reason she issued the citation was because of the risk of physical harm to persons in the bar and/or the risk of further spreading the virus. Aumend did not testify that she, Wathey, any patrons, or anyone else present at the time expressed any inconvenience, annoyance, or alarm due to the crowded conditions, or the lack of social distancing at appellant's business premises.

{¶ 8} Sam Love, agent in charge of the Columbus district office, testified that appellant was issued a citation rather than a warning because the agents felt the violation was egregious.

{¶ 9} The last witness called by the state to testify was Trentman. Trentman is an infectious disease consultant with the Ohio Department of Health. He testified about the highly infectious nature of COVID-19 and the manner in which it is transmitted. Based upon his review of the pictures of appellant's business premises taken by agent Wathey, and the testimony of the agents describing their observations, he stated that the conditions at appellant's business premises increased the likelihood of spreading the virus. He further testified that the conditions presented a risk of physical harm.

{¶ 10} Fadi Michael testified on behalf of the appellant. He stated that appellant's business premises reopened on May 15, 2020, one day after the COVID-19 shutdown had been lifted. Only the outdoor patio area was open. He stated that his tables were spread more than six feet apart on the patio. He admitted he did not know whether any of his employees were wearing masks that evening, but indicated that some employees have medical conditions that exempt them. He did not believe the Dine Safe Order required patrons to wear masks. Michael also disputed the agents' testimony that the patio area was very crowded. He testified that his managers made announcements throughout the night reminding the patrons to maintain social distancing.

{¶ 11} Based upon the evidence presented at the hearing, the commission issued an order on August 21, 2020 finding appellant in violation of Rule 52 as alleged in the notice of hearing and suspended appellant's liquor license beginning at noon, September 18, 2020, and ending noon, October 3, 2020. That order was stayed following appellant's appeal to the trial court pursuant to R.C. 119.12. In a decision dated February 19, 2021, the trial court affirmed the commission's order.

{¶ 12} Appellant appeals assigning the following errors:

> [1.] The trial court erred in ruling that the state satisfied the necessary elements of the offense.
>
> [2.] The trial court erred in finding that the citation issued was constitutional.

## Standard of Review

{¶ 13} This case involves an appeal pursuant to R.C. 119.12. In such an appeal, the trial court reviews an order to determine whether it is supported by reliable, probative, and substantial evidence and is in accordance with the law. *S. Court St. Ents. v. Ohio Liquor Control Comm.*, 10th Dist. No. 13AP-456, 2013-Ohio-5447, ¶ 6. In applying this standard, the trial court must " 'give due deference to the administrative resolution of evidentiary conflicts.' " *Id.*, quoting *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111 (1980). The Supreme Court of Ohio has defined reliable, probative, and substantial evidence as follows:

> (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true.
>
> (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue.
>
> (3) "Substantial" evidence is evidence with some weight; it must have importance and value.

*Id.* at ¶ 7, citing *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992).

{¶ 14} The common pleas court's " 'review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court "must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and weight thereof." ' " *Id.* at ¶ 8, quoting *Lies v. Ohio Veterinary Med.*

*Bd.*, 2 Ohio App.3d 204, 207 (2d Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). On questions of law, the common pleas court conducts a de novo review in determining whether the administrative order is " 'in accordance with law.' " *Id.*, quoting *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993).

{¶ 15} On appeal to this court, the standard of review is more limited. Unlike the court of common pleas, the court of appeals does not determine the weight of the evidence. *Id.* at ¶ 9, citing *Rossford Exempted Village Dist. Bd. of Edn. v. State Bd. of Edn.*, 63 Ohio St.3d 705, 707 (1992). In reviewing the court of common pleas' determination that the commission's order is supported by reliable, probative, and substantial evidence, this court's role is limited to determining whether the court of common pleas abused its discretion. *Id.*, citing *Roy v. Ohio State Med. Bd.*, 80 Ohio App.3d 675, 680 (10th Dist.1992). Absent an abuse of discretion on the part of the trial court, a court of appeals cannot substitute its judgment for that of the commission or the trial court. *Id.*, citing *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). However, a court does not have the discretion to apply the law incorrectly. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, ¶ 34. On the question of whether the commission's order was in accordance with law, this court's review is plenary. *S. Court St. Ents.*, 10th Dist. No. 13AP-456, 2013-Ohio-5447, ¶ 9.

**Legal Analysis**

{¶ 16} In its first assignment of error, appellant contends that the trial court abused its discretion in finding there was reliable, probative, and substantial evidence to support the commission's order finding a violation of Rule 52. We agree.

{¶ 17} Ohio Adm.Code 4301:1-1-52 (Rule 52) provides as follows:

> (B) Prohibited activities; no permit holder, his agent, or employee shall knowingly or willfully allow in and upon his licensed permit premises any persons to:
>
> (1) Engage in any disorderly activities.

In this case, the basis for the citation and the Rule 52 violation is the allegation that appellant's failure to comply with the Dine Safe Order constituted disorderly activities.

{¶ 18} Ohio Adm.Code 4301:1-1-52(A)(1) defines "[d]isorderly activities" as "those that harass, threaten or physically harm another person including threats or other menacing behavior, fighting, assaults and brawls or any violation as defined by section 2917.11." The commission relied solely on R.C. 2917.11 as the basis for finding that appellant engaged in disorderly conduct, and thereby, violated Rule 52.

{¶ 19} R.C. 2917.11 (titled "Disorderly conduct") provides as follows:

> (A) No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:
>
> * * *
>
> (5) Creating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender.

{¶ 20} R.C. 2901.01(A)(3) defines "[p]hysical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." Therefore, to prove disorderly conduct under R.C. 2917.11(A)(5), and a Rule 52 violation, the state must present evidence that appellant recklessly caused inconvenience, annoyance, or alarm to another by creating a condition that presented a risk of physical harm or illness by any act that serves no lawful and reasonable purpose.

{¶ 21} The trial court concluded there was reliable, probative, and substantial evidence supporting the commission's determination that appellant recklessly caused inconvenience to others by creating a condition that presented a risk of physical harm (i.e., illness) to persons by an act that served no lawful purpose as prohibited by R.C. 2917.11(A)(5). We agree there was evidence to support the commission's finding that appellant recklessly created a condition that presented a risk of physical harm or illness by an act that served no lawful purpose. Both Wathey and Aumend testified that they observed very crowded conditions, little social distancing, and the absence of mask wearing at appellant's business premises—conditions that were inconsistent with the Dine Safe Order. Trentman testified that these conditions increased the likelihood that the virus would spread, thereby presenting a risk of physical harm or illness. But neither Wathey nor Aumend testified that appellant recklessly caused them, any patron, or anyone else "inconvenience, annoyance, or alarm." Neither agent testified that any patron, employee,

or anyone else expressed any concerns to them about the conditions at appellant's business premises. Nor did they testify that they visited appellant's business premises because of a complaint.

{¶ 22} The commission suggested during oral argument that evidence of inconvenience, annoyance, or alarm was provided by Trentman. Trentman did testify that COVID-19 is very infectious and he was concerned the conditions present at appellant's business premises presented a risk of physical harm to the population based on the pictures he reviewed and the testimony of the agents. However, Trentman was not present at appellant's business premises on May 16, 2020, and he did not testify that appellant recklessly caused inconvenience, annoyance, or alarm to another at the time the citation was issued. The record simply contains no direct or circumstantial evidence that this element of an R.C. 2917.11(A)(5) disorderly conduct violation was satisfied. *State v. Smith*, 150 Ohio App.3d 45, 2002-Ohio-5994 (2d Dist.) (inconvenience, annoyance, or alarm to another is a necessary element of an R.C. 2917.11(A) disorderly conduct offense; conviction reversed when no evidence presented to prove this element); *State v. Holmes*, 129 Ohio App.3d 735 (2d Dist.1998) (inconvenience, annoyance, or alarm to another is a necessary element of a disorderly conduct offense under Section 648.04 of the Ordinances of Kettering, Ohio; conviction reversed when record contained no evidence establishing this element).

{¶ 23} Nor can we infer from these facts that anyone present at appellant's business premises on May 16, 2020 was inconvenienced, annoyed, or alarmed. The agents were present at appellant's business premises because of their desire to investigate appellant's compliance with the Dine Safe Order—not because someone complained about the conditions on May 16, 2020, or on any prior day.

{¶ 24} Because there was no evidence presented to the commission that appellant recklessly caused inconvenience, annoyance, or alarm to another, the commission could not rely on R.C. 2917.11(A)(5) as the basis for a Rule 52 violation. Therefore, we find that the trial court abused its discretion when it determined there was reliable, probative, and substantial evidence supporting the commission's order. Accordingly, we sustain appellant's first assignment of error.

{¶ 25} Having sustained appellant's first assignment of error, appellant's second assignment of error is moot, and we decline to address it. We reverse the judgment of the Franklin County Court of Common Pleas and we remand this cause to that court for further proceedings consistent with law and this decision.

*Judgment reversed; cause remanded.*

DORRIAN and MENTEL, JJ., concur.

DORRIAN, J., concurring.

{¶ 26} Ohio Adm.Code 4301:1-1-52 prohibits a permit holder to knowingly or willfully allow any person to engage in any "disorderly activities" on the licensed permit premises. Ohio Adm.Code 4301:1-1-52(B)(1). "Disorderly activities" is defined for purposes of Ohio Adm.Code 4301:1-1-52(B)(1) as "those that harass, threaten or physically harm another person including threats or other menacing behavior, fighting, assaults and brawls *or* any violation as defined by section R.C. 2917.11 of the Revised Code." (Emphasis added.) Ohio Adm.Code 4301:1-1-52(A)(1).

{¶ 27} The Notice of Hearing in this case alleges a violation as follows:

> On or about Saturday, May 16, 2020, you, your agent(s), and/or employee(s) knowingly and/or willfully allowed and/or engaged in improper conduct, to wit: recklessly caused *inconvenience, annoyance, or alarm* to another by creating a condition that presents a risk of illness, by an act or acts that served no lawful and reasonable purpose of the permit holder in and upon the permit premises in violation of Ohio Admin. Code 4301:1-1-52(B)(1) ("allowing persons to engage in disorderly activities").

(Emphasis added.)

{¶ 28} "[I]nconvenience, annoyance, or alarm" is one of several alternative elements which may be charged under Ohio Adm.Code 4301:1-1-52(B)(1). As pointed out by the majority, the element of "inconvenience, annoyance, or alarm" comes from R.C. 2917.11, and the commission relied solely on R.C. 2917.11 as the basis for finding that appellant engaged in disorderly activities. *See* majority opinion at ¶ 18-19.

{¶ 29} Because the specific allegation against appellant included the element of "inconvenience, annoyance, or alarm," and based on the facts of this case, I concur with the majority and would reverse this case.

_____